UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LEWIS F. ALBERS,<br><br>               Plaintiff,<br><br>   v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>               Defendant. | CASE NO. 3:16-cv-05249-BHS<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on the Motion for Summary Judgment filed by Defendant Federal Bureau of Investigation ("Defendant FBI"). Dkt. 12. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein. Dkts. 14, 16.

                              I.      <u>FACTUAL BACKGROUND</u>

The relevant facts are not disputed by the parties.

**A. FOIA correspondence.**

This case flows from a Freedom of Information Act (FOIA) request by Plaintiff Albers to Defendant FBI. Dkt. 1. By letter dated October 19, 2015, Plaintiff Albers made the following FOIA request to Defendant FBI:

> Dear FOIA Officer:
>
> This is a request under the Freedom of Information Act / Privacy Act[.]
>
> Date range of request: 1960 to current [October 19, 2015]
>
> Description of Request: Copies of all records pertaining to me Lewis Albers DOB: [redacted] Previous and ongoing threats
>
> Please search the FBI's indices to the Central Records System for the information responsive to this request pertaining to me Lewis Albers DOB: [redacted].

Dkt. 13-1.

On October 27, 2015, Defendant FBI, in a letter signed by its agent, David Hardy, Section Chief of the FBI's Record/Information Dissemination Section of the Records Management Division, acknowledged receipt of Plaintiff Albers' FOIA request. Dkt. 13-2 at 2, 3. Defendant FBI stated its intent to search, as requested, "the indices to the Central Records System for the information responsive to this request." *Id*. On October 31, 2015, Defendant FBI, in a letter signed by Agent Hardy, stated that "[b]ased on the information you provided, we conducted a search of the Central Records System [and] were unable to identify main file records responsive" to the FOIA request. Dkt. *Id*. at 6. The letter also informed Plaintiff Albers of his right to administratively appeal the sufficiency of Defendant FBI's records determination. *Id*.

On December 17, 2015, Plaintiff Albers filed in administrative appeal, which was denied by letter on January 20, 2016. Dkt. 13-3 at 2; Dkt. 13-4 at 5, 6.

Plaintiff Albers filed suit against Defendant FBI on April 1, 2016. Dkt. 1. Following the filing of the Complaint, on April 25, 2016, Defendant FBI conducted an additional search that

yielded one responsive record, 2 pages in length, which was disclosed to Plaintiff Albers on May 9, 2016. Dkt. 13 at ¶22; Dkt. 13-4 at 8, 9. After Defendant FBI and Plaintiff Albers' counsel spoke informally on June 7, 2016, Defendant FBI expanded its search by contacting the National Name Check Program, but use of that database did not yield any new records. Dkt. 13 at ¶24.

### B.  Declaration of Agent Hardy.

Agent Hardy's declaration details Defendant FBI's response to Plaintiff Albers' FOIA request. *See generally*, Dkts. 13, 16.

Defendant FBI has two categories of general indices for its Central Records System, "main entries" and "cross-reference entries." Main entries are the primary subject(s) of a record, whereas cross-reference entries are ancillary matters referenced or mentioned in a record. Dkt. 13 at ¶15.

The first search by Defendant FBI, in October of 2015, searched the Central Records System index through Automated Case Support (ACS), an electronic case management system effective in October of 1995. Dkt. 13 at ¶17. *See also*, *id.* at ¶21. As disclosed by Defendant FBI to Plaintiff Albers, the initial search extended only to main entries, not cross-reference entries. Dkt. 13-2 at 6; Dkt. 16 at ¶¶5, 6.

The second search by Defendant FBI, in April of 2016, searched the Central Records System index through ACS and another program, Sentinel, a "next generation case management system," effective FBI-wide on July 1, 2012. Dkt. 13 at ¶¶19, 22. Sentinel "did not replace ACS and its relevance as an important FBI search mechanism" for information generated after July 1, 2012, because new "information indexed into Sentinel are also replicated or "backfilled" into ACS." *Id*. In other words, Sentinel "builds on ACS and . . . provides another portal to locate information within the vast [Central Records System][.]" *Id*. at ¶19. The second search, which

included main entries and cross-reference entries, yielded one cross reference record, 2 pages in length. Dkt. 13 at ¶22; Dkt. 13-4 at 8, 9. The same cross-reference record was found using both ACS and Sentinel case management systems. Dkt. 16 at ¶5.

**C. Complaint and Motion for Summary Judgment.**

The Complaint recites the substance of Plaintiff Albers' FOIA request and demands that Defendant FBI "provide Plaintiff access to the requested documents." Dkt. 1 at 3. Plaintiff Albers is apparently satisfied that Defendant FBI has provided all records available, because, by stipulation of the parties, the sole issue before the Court is whether Defendant FBI conducted an adequate records search. Dkt. 12 at FN 1. *See generally*, Dkt. 14.

The Complaint also requests related costs and fees, which Plaintiff Albers may be entitled to if he prevails. Dkt. 1.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute,

requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. Courts must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. Courts must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### III.   DISCUSSION

Plaintiff Albers argues that Defendant FBI has not shown beyond material doubt that its first search (made prior to litigation) was reasonably calculated to uncover all relevant documents. Plaintiff Albers points to two flaws, both based on the premise that Defendant FBI should not have solely relied on the ACS case management system for its initial records search: (1) Defendant FBI did not conduct a manual review of index cards for all records between 1960, the start date of Plaintiff Albers' FOIA request, and October 1995, when ACS became effective; and (2) Defendant FBI did not use the Sentinel case management system to search all records between July 1, 2012, when Sentinel became effective, and October 19, 2015, the date of Plaintiff Albers' FOIA request. Dkt. 14 at 5.

The Freedom of Information Act requires agencies "upon request for records . . . [to] make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Agencies need not take exhaustive measures to uncover all potentially relevant records, but rather must "make reasonable efforts to search for the records in electronic form of format, except when such efforts would significantly interfere with the operation of the agency's automated information system." § 552(a)(3)(C). "Search" is defined as the "review, manually or by automated means, of agency records for the purpose of locating records which are responsive to a request." § 552(a)(3)(D).

When considering the adequacy of a records search, the agency has the burden to show that it has "conducted a search reasonably calculated to uncover all relevant documents." *Zemansky v. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985)(citation omitted). Courts do not focus on "whether there might exist any other documents possibly responsive to the [FOIA] request, but rather whether the *search* for those documents was *adequate* . . . [which] is judged by a standard of reasonableness[.]" *Id*. Agency affidavits may be sufficient to show the adequacy of a records search "if they are relatively detailed . . . nonconclusory and not impugned by evidence of bad faith." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995).

Applied here, Defendant FBI has met its burden to show beyond a material doubt that its records search was reasonably calculated to uncover all relevant documents. Defendant FBI used the ACS case management system to conduct a main entries search of the Central Records System, which is where information about individuals, including Plaintiff Albers, is indexed. Any records about Plaintiff Albers, if any, could be found with an ACS search. Furthermore, Agent Hardy's affidavits, which detail the records search, show no sign of bad faith. *See generally*, Dkts. 13, 16. The search was conducted with precision, with several search

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 6

1  parameters, including date of birth, social security number, and multiple combinations of
2  Plaintiff Albers' name. The Court should find that Defendant FBI's records search was adequate.
3      Plaintiff Albers' argument that Defendant FBI should have manually reviewed index
4  cards—rather than relying on ACS—to search for records between 1960 and 1992, is unavailing.
5  The initial records search, which relied on ACS, searched the Universal Index, the automated
6  index of the Central Records System, which was developed in 1958. Dkt. 13 at ¶18. "[M]anual
7  indices would not include records indexed under [Plaintiff Albers'] name," *id*. at ¶4, because
8  Plaintiff Albers was born in 1960, which postdates 1958. Therefore, all responsive records could
9  be found using ACS, so a manual search was unnecessary.
10     Plaintiff Albers' argument that Defendant FBI should have used Sentinel to search
11 records after July of 2012 is similarly unpersuasive, because ACS is "backfilled" with data
12 indexed by Sentinel. Dkt. 13 at ¶19. While conducting a records search with Sentinel could
13 confirm ACS search results, the search would be duplicative. To summarize then, Plaintiff
14 Albers' arguments fail, because all records within the date range of the FOIA request were
15 searchable using ACS.
16     Plaintiff Albers' best argument is that Defendant FBI should have initially conducted a
17 cross-reference records search in addition to a main entries search. Defendant FBI, however, has
18 shown that a main entries search was a reasonable interpretation of Plaintiff Alber's FOIA
19 request for all documents "pertaining to" Albers. The record reflects that main entries are the
20 primary subject(s) of a record, whereas cross-reference entries are ancillary matters referenced or
21 mentioned in a record. Dkt. 13 at ¶15.  While one interpretation of "pertaining to" could include
22 Albers as a primary subject or as an ancillary subject, it is not unreasonable to interpret
23 "pertaining to" in such a way as to search only for the primary subject of a particular matter.
24

Accordingly, the Court concludes that Defendant FBI has shown that it "conducted a search reasonably calculated to uncover all relevant documents." *Zemansky*, 767 F.2d at 571.

## IV. CONCLUSION

THEREFORE, it is hereby ORDERED that Defendant FBI's Motion for Summary Judgment (Dkt. 12) is GRANTED. The Clerk shall enter JUDGMENT for Defendant and close this case.

Dated this 24th day of February, 2017.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge